IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARLON T. HOLMES,           :     CIVIL ACTION NO. **3:CV-13-1635**
                                          :
              Plaintiff         :     (Judge Mannion)
                                            :
              v.              :     (Magistrate Judge Blewitt)
                                          :
DANIEL S. KEEN,              :
*et al.,*                              :
                                          :
              Defendants     : 

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On June 18, 2013, Plaintiff, a prisoner at Franklin County Correctional Jail, located in Chambersburg, Pennsylvania, filed, *pro se*, this action on a form civil rights Complaint, under 42 U.S.C. §1983.  Named as Defendants in the present Complaint are Franklin County Jail Warden Daniel S. Keen, Lieutenant Mike Morrow, Ex-Correctional Officer Brian Jones, and Franklin County Jail Doctor William Young.  (Doc. 1).

On June 18, 2013, Plaintiff also filed a Motion to proceed *in forma pauperis*.  (Doc. 2).

## II.    ALLEGATIONS OF COMPLAINT (DOC. 1).

In the Statement of Claim in his Complaint, Doc. 1, pp. 2-4, Plaintiff alleges the following:

> On December 9, 2012, at approximately 9:00 pm, CO Brian Jones and G-Unit Officer went over to the mop closet, and discharged his Oleoresin Capsicum spray in a joking manner to inflict pain upon the inmates.  He didn't have any approval from his shift commander.  Now after CO Brian Jones seeing the affect of his mace/ pepper spray had caused the inmates.  He laughed until we all started coughing, and vomiting due to the fumes from his ill-will intent with his spray.  We all requested for CO Brian Jones to have a lieutenant to come on to the Unit.  After hesitating for some time, Officer B. Jones finally

called for an lieutenant. Now about approximately 9:10 pm, Lt. Mike morrow showed up on the Unit. Lt. Mike Morrow requested CO B. Jones to follow him to the mop closet area where the incident took place. Now in some time, Lt. Mike Morrow and Officer B. Jones come out of the mop closet area, with the O.C. pepper/mace spray canister in a plastic bag. Lt. Mike Morrow stated to the inmates that Officer B. Jones slipped and fell on top of his mace/pepper spray and that's why it discharged. Now the inmates requested Lt. Mike Morrow to have medical treatment brought to the Unit based off of our choking, and vomiting. Lt. Mike Morrow stated No! And for us to put in a sick call slip, at approximately 9:30 pm. Before leaving the Unit, Lt. Mike Morrow requested Officer B. Jones to file an incident report, which Officer B. Jones intentionally, knowingly, and willfully fabricated the incident report concerning the account of the incident. To my understanding, Lt. Mike Morrow signed off on this report.

On December 10, 2012, myself and several inmates spoke with Co Henry concerning the incident, and after CO Henry witnessing the vomit from several inmates in the rec. area. Thus, CO Henry contacted Lieutenant Fawks about the vomiting in the recreation area. CO Henry was ordered to file an incident report by Lt. Fawks, whom immediately came to G-Unit. Due to myself and several inmates grievances about the incident, Lt. Fawks took a look on camera, as well as examined the spray canister, and noticed that there was no way Officer B. Jones could've slipped on the canister, and it would've discharged.

On or about January and/or February of 2013, I requested medical treatment as a result of having serious problems with my eyes, vision, and skin around the area. I was seen by one of the nurses on shift. I was given an eye solution called Artificial Tears for treatment for my eye problem. And placed on the doctor list for additional care. On or about two weeks later, I was called by medical to see doctor William Young who is the treatment physician and medical director of the jail and prime care. Thus, being examined by Dr. Young who refused to send me to outside the jail to be seen by an specialist concerning my eyes and skin problems. Therefore, I have had continuing problems with my eyes to this day, even though the treatment for my skin has slightly cleared. I have filed numerous grievances to the Warden Keen concerning the incident on G-Block, and medical denial on my issues. That since the incident on Dec. 9, 2012, have seemed to caused my issues. I have yet been sent out to be seen by an eye specialist.

As relief, Plaintiff in his Complaint requests a declaratory judgment stating that his constitutional rights have been violated; "preliminary and permanent injunction ordering Keen and Young to have me transported to a skin and eyes specialist,"; compensatory damages in the amount of $20,000 against each Defendant[1]; punitive damages against each defendant in the amount of $10,000; and emotional distress and mental anguish damages against Defendants Jones, Morrow, and Young, in the amount of $5,000.[2]  (Doc. 1, p. 3).

We will now screen Plaintiff's **Document 1** Complaint as required by  the Prison Litigation Reform Act.  *See Banks v. County of Allegheny*, 568, F.Supp.2d 579, 587-88 (W.D. Pa. 2008).

## III.    STANDARDS OF REVIEW.

### A.    *PLRA*

As stated, Plaintiff filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C.  § 1915.  (Doc. 5).  The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28

---

[1]  To the extent that Plaintiff is seeking monetary damages (*i.e.*, punitive and compensatory damages) against Defendants in their official capacities, we will recommend that this request for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendant in their personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

[2]  Plaintiff's requests for  specific amounts of monetary damages (Doc. 1, p. 3) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim  specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### B.    42 U.S.C. § 1983

In a § 1983 civil rights action, Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); see *also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").  "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

4

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

### C.    *Motion to Dismiss*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate

standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other

words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly*, 550 U.S. at 555) (not precedential).

## IV.   DISCUSSION.

### 1.   *Exhaustion of Remedies*

Initially, as a threshold matter, we must address the question of the exhaustion of Plaintiff's administrative remedies to his grievance.  A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a).  In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he has not commenced the prison's administrative remedy process. (Doc. 1, pp. 2-3).   *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies **prior** to filing a civil rights suit.  (emphasis added) *See  Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under      § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted).   Further, the Defendants have   the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

8

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

Although Plaintiff does mention that he has filed several grievances, including to the warden of the Franklin County Jail, he does not mention if this constitutes a full exhaustion under the prison's formal grievance system. As such, at this point, we are unable to determine conclusively if Plaintiff has indeed exhausted his available remedies, as required by section 1983.

**2.      *Constitutional Claims***

We construe Plaintiff's Complaint as stating a claim for a denial of medical care in violation of his Eighth Amendment right against cruel and unusual punishment against Defendants Doctor Young and Warden Keen. The Court stated in *Carpenter*, 2011 WL 995967, *6, that:

> To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual

injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (quoting *White v. Napoleon,* 897 F.2d 103, 109 (1990); *Monmouth County Corr. Inst. Inmates v. Lensario,* 834 F.2d 326, 346 (3d Cir.1987).

Insofar as Plaintiff is stating a claim for denial of medical care, he does not allege, in regard to that claim, any facts from which it can be inferred that he was subjected to a substantial risk of serious harm. Plaintiff's allegation that he suffered irritation to his eyes and surrounding skin cannot be perceived as presenting a substantial risk of serious harm. In fact, we find that Plaintiff's allegation only amount to claims of negligence at best, which are not actionable in a §1983 civil rights suit.

Thus, in his Complaint, even though Plaintiff alleges that he was caused physical harm, "serious problems with my eyes, vision, and skin around the area," Plaintiff admits that he was treated medically for his issues. He describes in his Complaint receiving treatment from a nurse, as well as Defendant Dr. Young. He further concedes that the treatment he was given for his skin has rendered the condition "slightly cleared." (Doc. 1, p. 6).

Therefore, Plaintiff does not allege that any Defendant was deliberately indifferent to any risk of harm to Plaintiff nor that any official was aware of facts from which the inference of a substantial risk of harm could be drawn. In fact, as stated, Plaintiff readily admits that he did receive medical treatment for his eyes and skin. According to the Supreme Court in *Estelle*, negligently diagnosing or treating a medical condition does not amount to an Eighth Amendment violation of an inmate's right to medical care / treatment. *Estelle*, 429 U.S. at 106.

Furthermore, the *Williams* Court stated:

> A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. . . [I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.

2008 WL 4453100, *7 (M.D. Pa.)(citing *Monmouth Ct. Corr. Inst. Inmates*, 834 F.2d at 347); *see also Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008).

Additionally, according to the Court in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa.1996) (*citing Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)) (*quoting Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)). When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F.Supp. 542, 547 (M.D.Pa.1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir.1990).

Based on the above standards, therefore, we find that Plaintiff has not properly alleged a claim for denial of medical care. Plaintiff concedes that he has received medical care, and is only disputing the adequacy of that care. Therefore, as *Nottingham* specifies, no Eighth Amendment claim exists. The Third Circuit has specified that if a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

We will recommend that Plaintiff's Eighth Amendment denial of medical care claim be dismissed with prejudice, as we find futility in allowing him to amend his Complaint as to this claim.

We find further that Plaintiff has impermissibly named Warden Keen as a Defendant based only on *respondeat superior*. Plaintiff does not allege that Defendant Keen was personally involved with his alleged denial of medical care. In fact, Plaintiff names Defendant Keen only as to his responses to Plaintiff's filed grievances.

Plaintiff cannot name a Defendant in this § 1983 civil rights action based solely on *respondeat superior,* as he is clearly attempting to do with respect to Defendant Keen. *See Rogers v. U.S.*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010); *Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers,* 696 F.Supp.2d at 488, repeated the personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id.* quoting *Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold

police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

As discussed above, we do not find that the Plaintiff has specifically stated the personal involvement of Defendant Keen with respect to his Eighth Amendment denial of medical care claim. *See Rogers, supra.* In his Complaint, Plaintiff does not allege any type of personal involvement by Defendant Keen in relation to his stated claims. In light of the above detailed allegations in Plaintiff's Complaint, Defendant Warden Keen has not been sufficiently stated to have been personally involved with Plaintiff's constitutional claims. In *Carpenter v. Klopotoski*, 2011 WL 995967, *7, (M.D. Pa. 3-17-11), the Court stated:

> To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir.1995).

Furthermore, the court has indicated that evidence only showing supervisory Defendants, *i.e.* Warden Keen's, involvement in an Eighth Amendment medical care claim in that the supervisor responded unfavorably to the inmate's later-filed grievances, does not establish an Eighth Amendment violation against them. *Atwell v. Lavan*, 557 F. Supp.2d 532, 547 (M.D. Pa. 2008). In the instant case, Plaintiff has only alleged that Defendant Warden responded unfavorably to his grievances, without further involvement. It is well settled that a warden cannot be considered "deliberately indifferent"

13

because he did not respond to the medical complaints of an inmate who was already receiving treatment from the prison doctor. *Durmer*, *supra*. Accordingly, we find that Plaintiff has asserted a claim against Defendant Warden Keen only insofar as Defendant Keen would not respond to his requests to see an outside specialists, respond favorably to his grievances. Based upon *Atwell*, we will recommend that Defendant Warden Keen be dismissed.

Based on the Complaint, we do not find that supervisory Defendant Keen is sufficiently alleged to be personally involved in Plaintiff's constitutional claims. Therefore, we shall recommend that supervisory Defendant Keen be dismissed from this case without prejudice for lack of personal involvement. *See Rogers, supra*. Also, based upon the above, we find that the Court should allow Plaintiff to amend his Complaint against Defendant Keen with respect to his Eighth Amendment claims, and we find that there is no bad faith, undue delay, prejudice, or futility if Plaintiff is allowed to amend his pleading against the stated Defendant. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility. *See Alston, supra*.

We also construe Plaintiff's Complaint as making out a claim against Defendant CO Jones for excessive use of force. In order to establish an Eighth Amendment excessive force claim, the Court stated in *Freeman v. Bronkoski*, 2008 WL 4414725, *4 (M.D. Pa.):

> The Third Circuit Court of Appeals has noted that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

In considering such a claim, the fact-finder must determine " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause. harm." " *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). When " 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," summary judgment is inappropriate for the defendant. *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Five factors apply in determining whether a correctional officer used excessive force: "(1) 'the need for the application of force;" (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of the response.'" *Id.* (quoting *Whitley*, 475 U.S. at 321).

*See also Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004) (Court stated the factors in establishing an Eighth Amendment excessive force claim against prison staff); *Caldwell v. Luzerne County Correctional Facility Management*, 732 F.Supp. 2d 458, 469 (M.D. Pa. 2010) citing *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

"The core inquiry in claims of excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." (Citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

The *Wesley* Court also stated:

While the Eighth Amendment's proscription against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force if the use of force is not of a sort "repugnant to the conscience of mankind," to state a claim, the plaintiff need only allege that force was maliciously applied to cause harm." *Id.* (Citation omitted).

*Wesley*, 2004 WL 1465650 *6. See also *Eppers v. Dragovich*, 1996 WL 420830 (E.D. Pa.).

Based on the foregoing standards, we find that Plaintiff has alleged sufficient facts to make out

a cognizable claim. We will recommend that Plaintiff's excessive use of force claim be allowed to proceed as against Defendant CO Jones.

### 3.    *False Incident Reports*

To the extent that Plaintiff alleges that Defendants Lt. Morrow and Jones violated his Eighth Amendment rights by filing a false incident report to cover up their alleged constitutional violations, this allegation generally does not amount to a constitutional violation. Plaintiff is not claiming this incident report was filed by Defendants in retaliation for any situation regarding Plaintiff or in violation of his Fifth Amendment due process rights. He is only alleging that this incident report was filed by Defendants to "cover up" their alleged Eighth Amendment violations.

We find that Plaintiff's allegation that Defendants Lt. Morrow and Jones filed a false incident report fails to state a constitutional claim, and, therefore, should be dismissed with prejudice. As the Court stated in *Kimball v. Walters*, 2007 WL 87897, *8, "[m]ere allegations of falsified misconduct reports, without more, are not enough to state a due process claim upon which relief may be granted." (Citation omitted). *See also Bailey v. Beard*, 2008 WL 4425588, *10 (M.D. Pa.)("a prisoner does not have a constitutional right to be free from being falsely or wrongfully accused of conduct.").

In *McCullon v. Brouse*, 2011 WL 1398481, *7(M.D. Pa. 3-24-11) adopted by 2011 WL 1419650 (M.D. Pa. 4-13-11), the Court stated:

> Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid *Bivens* cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. *See e.g., Freeman v. Rideout,* 808 F.2d 949, 952–53 (2d Cir.1986) (the filing

16

of false charges does not constitute a claim ... so long as the inmate was granted a hearing and an opportunity to rebut the charges); *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir.1984)." *Richardson v. Sherrer,* 344 F. App'x 755, 757–758 (3d Cir.2007). *See also Booth v. Pence,* 141 F. App'x 66 (3d Cir.2005); *Smith v. Mensinger,* 293 F.3d 641, 653–54 (3d Cir.2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir.2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings .... *See Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." *Nifas v. Beard,* 374 F. App'x 241, 244 (3d Cir.2010).

Therefore, we shall recommend that Plaintiff's claim against Defendants Morrow and Jones alleging that Defendants issued a false incident report to cover up an excessive use of force violation be dismissed. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad

faith, undue delay, prejudice, or futility. *See Grayson, supra*. Based upon the above, we find at this time that it would be futile to allow Plaintiff to amend his Complaint against Defendant Morrow and Defendant Jones with respect to his claim that these Defendants issued a false incident report in order to cover up Defendant Jones' excessive use of force violation, as this is not a cognizable constitutional claim under §1983.

Furthermore, because Plaintiff has only named Defendant Lt. Morrow in relation to the alleged false incident report he filed, and because we will recommend that this false incident report claim be dismissed with prejudice, we will also recommend that Defendant Morrow be dismissed from this action with prejudice as well as we find futility in allowing Plaintiff to amend his Complaint against this Defendant. *See Grayson, supra.*

## V.    RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that:

1) Plaintiff's Eighth Amendment denial of medical care claim be **DISMISSED** with prejudice.

2) Plaintiff's false incident report claim be **DISMISSED** with prejudice.

3) Defendant Keen be **DISMISSED** with prejudice from the instant action.

4) Defendant Morrow be **DISMISSED** with prejudice from the instant action.

5) Plaintiff's instant action be permitted to proceed only with regard to the excessive force claim and only against Defendant Jones.

 **s/ Thomas M. Blewitt** 
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 13, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARLON HOLMES,            :         CIVIL ACTION NO. **3:CV-13-1635**
                              :
          Plaintiff        :         (Judge Mannion)
                              :
          v.            :         (Magistrate Judge Blewitt)
                              :
DANIEL S. KEEN,         :
*et al.*,                    :
                              :
          Defendants     :

## <u>NOTICE</u>

     **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 13, 2013.**

     Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

_____  **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 13, 2013**